IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


THOMAS P. RAY,

                       Plaintiff,                                       Civil No. 05-663-ST

                     v.                                       FINDINGS AND
                                                            RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

                     Defendant.

_____

STEWART, Magistrate Judge:

      Plaintiff, Thomas P. Ray, seeks judicial review of the Social Security Commissioner's

final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of

the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  The

Commissioner's decision should be affirmed.

**<u>BACKGROUND</u>**

1 - FINDINGS AND RECOMMENDATION

Born in 1948, Ray completed high school and three years of college.  Tr. 53, 66.[1]
Beginning in 1974, Ray worked as a firefighter and fire captain, before retiring on June 30, 2000.
Tr. 60-61, 434.

In August 2002 at the age of 54, Ray had a stroke, leading to his alleged disabilities of
left arm weakness, left gait clumsiness, and impaired concentration as the residual effects.  Tr.
60, 149, 194.  Ray  filed an application for DIB on November 19, 2002, relying upon August 8,
2002, as his onset date.  Tr. 53-55.  This application was denied, and the Commissioner's
decision became final on March 22, 2005.  Tr. 4-6.

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential  process in determining disability
under the meaning of the Act.  20 CFR § 404.1520; *Bowen v. Yuckert*, 482 US 137, 140-42
(1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.
If he is, the claimant is not disabled.  20 CFR § 404.1520(4)(i).  At step two, the ALJ determines
if the claimant has "a severe medically determinable physical or mental impairment" that meets
the 12 month duration requirement.  20 CFR §§ 404.1509, 404.1520(4)(ii).  If the claimant does
not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed"
impairment in the regulations.  20 CFR § 404.1520(4)(iii).  If the impairment is determined to
equal a listed impairment, the claimant is disabled.

---

[1]  Citations to "Tr." refer to indicated pages in the official transcript of the administrative record filed with the
Commissioner's Answer on August 29, 2005 (docket #5).

2 - FINDINGS AND RECOMMENDATION

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 CFR § 404.1520(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 CFR § 404.1520(a)(4)(iv).

If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999); 20 CFR § 404.1520(a)(4)(v). If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's RFC. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 CFR § 404.1566.

## <u>THE ALJ'S FINDINGS</u>

The ALJ concluded that Ray was "not entirely credible in light of the treatment record and his daily activities." Tr. 14. The ALJ found that Ray's only medically determinable impairments meeting the durational requirement are "status post cerebrovascular accident" and an adjustment disorder with anxiety and depression. Tr. 16. The ALJ cited Ray's previous lumbar surgery and rotator cuff injury in his discussion, but did not include these impairments in his findings. Tr. 14, 16.

3 - FINDINGS AND RECOMMENDATION

At step two, the ALJ found that Ray's impairments did not significantly limit his ability to perform basic work-related activities. Tr. 16. Accordingly, the ALJ determined that Ray was not disabled under the Act at any time through the date of his decision. *Id*.

### STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989), citing *Martinz v. Heckler*, 807 F2d. 771, 772 (9th Cir 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F2d at 750; *see also Batson*, 359 F3d at 1193.

### DISCUSSION

Ray challenges the ALJ's evaluation of the evidence and conclusions at step two. In particular, he contends the ALJ failed to find a medically determinable impairment because he improperly assessed Ray's credibility, improperly rejected Ray's testimony and improperly evaluated the medical evidence.

///

**I.  Ray's Credibility**

The ALJ found that Ray was "not entirely credible in light of the medical treatment record and his daily activities."  Tr. 14.  Ray's credibility, in turn, influences interpretation of his medical record, discussed below.

### A. <u>Credibility Analysis</u>

A general assertion that a claimant is not credible is insufficient.  The ALJ must give specific reasons, supported by substantial evidence, indicating that the ALJ has not arbitrarily discredited a claimant's testimony.  *See Thomas v. Barnhart*, 278 F3d 947, 958-59 (9th Cir 2002).

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms.  *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996).  "[O]nce the claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Bunnell v. Sullivan*, 947 F2d 341, 345 (9th Cir 1991) (*en banc*) (citation omitted).

If the ALJ finds that the claimant's testimony regarding the severity of symptoms is not credible, the ALJ '"must specifically make findings which support this conclusion" and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit" it.  *Id* (internal quote marks and citations omitted).  If there is no evidence of malingering, the ALJ may reject symptom evidence only if he gives clear and convincing reasons, including which testimony is

not credible and what facts in the record lead to that conclusion. *Smolen*, 80 F3d at 1281, 1283-84; *Reddick v. Chater*, 157 F3d 715, 722 (9th Cir 1998).

When evaluating a claimant's credibility, the ALJ must consider objective medical evidence together with the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F3d at 1284; *see also* SSR 96-7p. In addition, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen*, 80 F3d at 1284 (citations omitted).

### B. Medical Evidence Supporting the ALJ's Credibility Determination

The ALJ did not err by concluding that the objective medical evidence fails to support the degree of impairment Ray alleges.

After experiencing a stroke on August 8, 2002, Ray was initially hospitalized with left side weakness and mild paralysis. Tr. 149-50, 171. After six days he was discharged into rehabilitation. Tr. 148, 214. During rehabilitation Ray recovered use of his left arm and leg and "most of his strength." Tr. 267-68. Nine months after his stroke, in May 2003, Ray's left hand grip strength was 70 pounds and gait analysis found his gait essentially normal, with a near perfect score of 23 out of 24. Tr. 230, 391-92. At that time, physical therapy notes showed that Ray was not compliant with his home exercise program due to increased activities of daily living

and leisure activities.  Tr. 230.  A subsequent physical therapy report in July 2003 noted that Ray

met all his goals regarding his gait and grip strength.  Tr. 376-77.

     Ray's presentation of his complaints does not support the degree of severity he alleges.

Ray claims that his reported clumsiness and weakened left arm would preclude all employment,

writing, "There is no way I could do <u>anything</u> for a full time job."  Tr. 115 (emphasis in

original).  However, no treating or evaluating physician suggested such an impairment.  To the

contrary, the medical reports indicate that Ray's improvement was "remarkable," although he

was "not expected to achieve 100% resolution of the symptoms and signs" (Tr. 395), and that his

frustration at not achieving a 100% recovery is attributable to an adjustment disorder.  Tr. 228-

29, 267-68, 276, 297.

### C.  <u>Other Credibility Considerations</u>

The ALJ correctly noted that Ray has engaged in activities which are inconsistent with

his allegations of fatigue and difficulty using his left arm or walking.  Tr. 15.  Ray began an

upholstery class in September 2004, two years after his alleged onset date.  Tr. 440.  The ALJ

additionally cited Ray's reports of overseas travel, crabbing expeditions, and construction and

home improvement projects.  Tr. 14-15, 402,  421, 423, 431.  While a claimant is not required to

"vegetate in a dark room," normal activities of daily life may be construed as effort equal to that

of employment.  *Orteza*, 50 F3d at 750; *Cooper v. Bowen*, 815 F2d 557, 561 (9th Cir 1987).  The

record indicates that Ray engages in a variety of normal activities of daily life, even if not

performed at his pre-stroke level.

This court is required to uphold the ALJ's credibility finding if it is based upon a rational

interpretation of the evidence.  *Magallanes*, 881 F2d at 750.  The ALJ's findings regarding Ray's

credibility and his alleged inability to work in relation to his impairments are sufficiently specific to conclude they are not arbitrary.  *See Batson*, 359 F3d at 1193.  The record supports Ray's history of stroke and surgical events, but not the degree of impairment he claims.  In finding Ray's allegedly restricted activity unsupported by both the medical record and Ray's reported activities, the ALJ gave specific and legitimate reasons for rejecting Ray's testimony regarding the severity of his symptoms.

Because the ALJ appropriately questioned Ray's credibility regarding the degree of his symptoms and their impact on his ability to work, the ALJ is not required to credit Ray's testimony regarding his impaired concentration and clumsiness in excess of the deficits described in his medical records.  *See Magallanes*, 881 F2d at 755.  However, even if the ALJ erred in his credibility finding, symptom testimony alone never establishes disability.  *Fair v. Bowen*, 885 F2d 957, 604 (9th Cir 1989).  Therefore, consideration of Ray's medical record is necessary.

## II.  Medical Source Statements

The medical record begins in 1999 and continues through June 2004.  It includes lumbar surgery in 1999, a stroke episode in August 2002, and rotator cuff surgery in March 2004.  Tr. 149, 170, 352-53, 366-68.  Ray's present claim concerns the period beginning August 8, 2002.  Tr. 53-55.  Ray suggests the ALJ improperly addressed the opinions of treating physicians, specifically regarding the severity of his post-stroke status and the severity of his rotator cuff injury.

### A.  Physical Impairments

8 - FINDINGS AND RECOMMENDATION

Regarding Ray's stroke, no definitive medical evidence addresses its lasting effects. The record does contain follow-up observations consistent with Ray's reports of clumsiness and impaired concentration, but, as discussed above, does not support the degree of physical impairment he alleges. Tr. 230, 376-77, 391.

With respect to fatigue, Ray testified that on good days he needs to sit down on a couch or chair for a few minutes up to a half hour three or four times and that on bad days, which occur two or three times a month, he needs to spend at least two hours on the couch. Tr. 426-28. Physical therapy notes in October 2002 and June 2003 note Ray's reported fatigue, but also noted that it was improving. Tr. 244, 395. In June 2004, Ray's treating physician, Dr. Peters, noted a report of anxiety, obsessive thoughts, trouble sleeping since stopping Celexa, and "significant fatigue." Tr. 397. As a result, Ray was advised to start taking Celexa again. Tr. 397. However, the medical records make no reference to Ray lying down due to fatigue at least two hours a day several times a month.

Ray had lumbar surgery in November 1999 for a herniated disc. Tr. 352 - 353. His recovery was uneventful, though Ray later complained of residual back pain after unloading his truck. Tr. 408. The record does not otherwise reflect allegations of back pain.

In March 2004 Ray had surgery to repair a torn rotator cuff, again without any apparent complication in recovery. Tr. 366-68. Within one month after the surgery, Ray's treating physician noted "post surgical discomfort," but the record does not otherwise support any other allegation of post-surgical disability. Tr. 401. Ray submits that because his initial rotator cuff injury occurred in February 2001, the period between this injury and his March 2004 surgery fulfills the duration requirement under 20 CFR § 404.1509. Tr. 294. Notably, Ray did not cite

his rotator cuff injury in his initial application.  Tr. 60.  Regardless, this argument fails as no medical evidence suggests the injury preceding surgery meets the severity requirement at step two of the disability analysis.  Tr. 294-95; 20 CFR § 404.1520(a)(4)(ii).  The ALJ appropriately omitted Ray's pre-surgical rotator cuff impairment from his disability analysis.  *See Howard v. Barnhart*, 341 F3d 1006, 1012 (9th Cir 2003).

In sum, the medical evidence does not support the degree of physical impairment claimed by Ray.

### B.  Mental Impairments

Ray suggests that his adjustment disorder and associated depression and anxiety preclude all work.  This suggestion is not supported by the mental health providers.

In October 2002, treating psychologist Diane Pierce diagnosed an adjustment disorder. She did not find depression or anxiety independent of the adjustment disorder diagnosis. Tr. 228-29.  Pierce specifically stated she found "no obvious cognitive problems."  Tr. 228. These findings are supported by clinical notes.  Tr. 409-12.   In November 2002, Pierce primarily noted Ray's excessive alcohol consumption, but agreed that further treatment was unnecessary because his symptoms were improving and he reported "doing well."  Tr. 227.

Between August 2003 and May 2004, the treatment notes submitted by Ray's general practitioner and treating physician, Dr. Peters, do not reflect the degree of anxiety Ray alleges. Tr. 397-98.  Dr. Peters noted anxiety complaints in May and June 2004 only.  *Id.*   In May 2004 Ray ceased taking his antidepressant medication, leading to an increase in reported depression, but these symptoms resolved when he resumed taking his antidepressant.  Tr. 397-99.

In sum, the record specifically indicates Ray has an adjustment disorder, with associated anxiety and depression, but does not reflect significant decompensation due to this adjustment disorder. The ALJ appropriately noted this history in his decision. Tr. 15.

### C. **Duty to Develop the Record**

Ray finally claims that the ALJ failed in his duty to develop the record because he did not extensively consider Ray's post-surgical shoulder impairment.

The record contains clinical notes and statements from Ray's treating physicians and psychologist, including Drs. Pierce and Peters. Tr. 227-29, 409-12, 340-64, 397-408. The record also includes extensive emergency room, surgical, rehabilitation, and physical therapy reports. Tr. 146-226, 230-300, 365-96. These records do not show disabling or disturbing pain stemming from Ray's rotator cuff injury throughout the period in question.

The burden of showing disability is on the claimant. *Manuel v. Apfel*, 172 F3d 1111, 1113 (9th Cir 1999). This includes the burden of providing a complete record. 20 CFR §§ 404.704, 404.1512. It is reasonable to require the claimant to provide a complete record because he is in a better position to provide information about her medical condition and to identify relevant sources. *Yuckert*, 107 US at 146. The ALJ is responsible for addressing evidentiary conflicts, and his duty to further develop the record is triggered when ambiguities arise. *Batson*, 359 F3d at 1195; *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2002). The ALJ adequately addressed the evidence and appropriately did not find any ambiguities in his decision. Tr. 22, 24-25.

Read as a whole, the medical record affirms the ALJ's finding that Ray is not entirely credible and that his impairments do not significantly limit his ability to perform basic work-related activities.

Accordingly, Ray has failed to show substantive error in the ALJ's step two finding. The record is adequately developed, and the ALJ appropriately included all limitations in finding Ray's alleged impairments to be non-severe.

## **RECOMMENDATION**

The Commissioner's decision that Ray did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed and this case should be dismissed.

## **SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due by July 28, 2006. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 7th day of June, 2006.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

12 - FINDINGS AND RECOMMENDATION